Filed 8/5/24  Westlands Water Dist. v. North Coast Rivers Alliance CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WESTLANDS WATER DISTRICT,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NORTH COAST RIVERS ALLIANCE et al.,<br><br>Defendants and Appellants. | F085567<br><br>(Super. Ct. No. 19CECG03887)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

Law Offices of Stephan C. Volker, Stephan C. Volker, Stephanie L. Clarke and Jamey M.B. Volker for Defendants and Appellants.

Stradling Yocca Carlson & Rauth, Allison E. Burns and Douglas S. Brown for Plaintiff and Respondent.

-ooOoo-

This appeal concerns an award of attorney fees pursuant to Code of Civil Procedure section 1021.5.  Defendants sought fees in excess of $330,000.  The trial court awarded roughly $105,800.  Defendants claim they deserve more money.  Plaintiff

disagrees.  The standard of review is highly deferential to the trial court, and we find no reversible error.  The amount of the award will be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants—North Coast Rivers Alliance, Winnemem Wintu Tribe, California Sportfishing Protection Alliance, Institute for Fisheries Resources, Pacific Coast Federation of Fishermen's Associations, and San Francisco Crab Boat Owners Association—collectively refer to themselves as NCRA.  We do the same, but where applicable we also use NCRA to individually reference defendant North Coast Rivers Alliance.  Plaintiff Westlands Water District is referred to as Westlands.

***Litigation History***

A more comprehensive background is provided in *Westlands Water Dist. v. All Persons Interested* (2023) 95 Cal.App.5th 98, which we incorporate by reference.  The following is an abbreviated summary of the most relevant events.

In October 2019, Westlands filed a validation action in the Fresno Superior Court pursuant to, inter alia, Code of Civil Procedure section 860 et seq.  The deadline for interested parties to answer the complaint was December 16, 2019.  NCRA filed an answer on the last possible day, shortly before 5:00 p.m., and the filing was rejected for failure to pay all first appearance fees.  NCRA resolved the problem the next morning.

On December 30, 2019, Westlands filed a "Motion for Validation of Contract," seeking entry of judgment in its favor on all issues.  NCRA filed an opposition brief, as did three other groups of defendants.  The motion was decided in March 2020.

Although the trial court denied Westlands' validation motion, it also found the answers filed by NCRA and two other groups of defendants were untimely.  This finding would have barred NCRA from further participating in the case, and they filed an immediate appeal.  The appeal resulted in a discretionary stay of the trial court action from approximately August 2020 through May 2021.  The finding of untimeliness was reversed by this court (*Westlands Water Dist. v. North Coast Rivers Alliance* (Mar. 9,

2.

2021, F081174) [nonpub. opn.]), and the trial court proceedings resumed with a case management/status conference held on May 25, 2021. An unsuccessful settlement conference took place in July 2021.

In September 2021, Westlands filed a "Renewed Motion for Validation Judgment" along with a combined "Opening Brief and Memorandum of Points and Authorities in Support of Renewed Motion for Validation Judgment." NCRA responded by filing what was styled as an "Opening Merits Brief." Additional briefing followed, but there was no trial. Westlands' renewed validation motion was denied by written decision in October 2021. The validation complaint was ordered dismissed, and a judgment of dismissal was entered in March 2022.

### *The Fees Dispute*

In May 2022, NCRA filed a motion pursuant to Code of Civil Procedure section 1021.5 for an award of attorney fees. Compensation for 320.6 hours of attorney time was requested at hourly rates of $750 (for 235.1 hours) and $450 (for 85.5 hours). NCRA also claimed 31.1 hours of paralegal time at an hourly rate of $175. This translated to a claimed "lodestar" of $220,242.50. NCRA also requested a multiplier of 1.5, bringing the total proposed award to $330,363.75. In addition, NCRA sought reimbursement of $5,668.87 for third party vendor charges incurred by counsel while performing legal research.

Westlands disputed NCRA's eligibility for attorney fees, which is an issue outside the scope of this appeal. Alternatively, Westlands opposed the hourly rates claimed by NCRA and disputed the hours spent on various tasks. In particular, Westlands criticized NCRA's attorneys for "block billed time entries and inadequate explanations of work performed." Westlands further accused NCRA's counsel of claiming inflated hours for brief writing when "large sections of [the] work product" were "copied and pasted from previous filings."

On November 7, 2022, the trial court issued a tentative ruling to grant NCRA's motion at lesser hourly rates and for fewer hours than requested. The motion was argued the next day and taken under submission. On November 14, 2022, the trial court issued a written decision largely conforming to its earlier tentative ruling, but with one notable change. Having apparently been swayed by one of NCRA's arguments at the motion hearing, the trial court added 23.3 hours of attorney time and 8.2 hours of paralegal time to the previously indicated award.

The trial court's detailed ruling addressed 10 categories of tasks performed by NCRA's counsel. For each category the court specified the amount of time it would allow for principal attorney, associate attorney, and paralegal work. The total award, after applying a multiplier of 1.5 to the lodestar, was $105,797.40. This figure included the reimbursement of $5,668.87 for legal research costs. In other words, the award for all attorney and paralegal time was actually $100,128.53. Further details are provided in the body of the opinion.

Based on NCRA's briefing, it appears they do not realize the total award included approximately $3,885 in additional compensation beyond what was indicated in the trial court's category-by-category analysis. The calculation of billed time expressly allowed for all categories was 74.5 principal attorney hours at the rate of $550 (totaling $40,975), 55.8 associate hours at the rate of $350 (totaling $19,530), and 20.9 paralegal hours at the rate of $175 (totaling $3,657.50), which translates to a lodestar of $64,162.50. After applying the positive multiplier of 1.5, the resulting figure is $96,243.75. Adding the $5,668.87 reimbursement for legal research costs brings the amount to $101,912.62, which is $3,884.78 less than the total award of $105,797.40. The significance of this discrepancy, which inured to NCRA's benefit, is explained in the Discussion.

**DISCUSSION**

## I.      Standard of Review

Once a party's eligibility for a fee award is established, all related decisions are generally reviewed for abuse of discretion and/or substantial evidence.  (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist*. (2019) 36 Cal.App.5th 970, 980–981.)  "With respect to the *amount* of fees awarded, there is no question our review must be highly deferential to the views of the trial court.  [Citation.]  As our high court has repeatedly stated, '"'[t]he "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"—meaning that it abused its discretion.'"'  [Citation.]"  (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 777.)

"An attorney who prosecutes an appeal from an order addressed to the trial court's sound discretion is confronted with more than a daunting task."  (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448.)  All reasonable inferences permitted by the record will be drawn in favor of the challenged ruling.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  "Unless an appellant demonstrates otherwise, we assume the trial court followed the law and acted within its discretion."  (*Sonoma Land Trust v. Thompson* (2021) 63 Cal.App.5th 978, 984.)

## II.      Legal Overview

The determination of recoverable fees "begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate."  (*PLCM Group*, *Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)  "The reasonable hourly rate is that prevailing in the community for similar work."  (*Ibid*.)  The rate component has also been described as "the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type."  (*Ketchum v. Moses* (2001) 24

Cal.4th 1122, 1133, italics omitted.)  The lodestar may also include paralegal fees "if the trial court deems it appropriate."  (*Roe v. Halbig* (2018) 29 Cal.App.5th 286, 312.)

Once calculated, the lodestar may be enhanced or decreased, "based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided."  (*PLCM Group*, *Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1095.)  The final award "must be based on a proper utilization of the lodestar adjustment method, both to determine the lodestar figure and to analyze the factors that might justify application of a multiplier."  (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 647.)  The 1.5 multiplier in this case was specifically requested by NCRA and is not being challenged.

## III.    The Trial Court Permissibly Adjusted the Hourly Rates

### A.    Additional Background

NCRA's legal counsel, the Law Offices of Stephan C. Volker, is located in Berkeley, California.  NCRA requested hourly rates of $750 for principal attorney Stephan C. Volker, $450 for his associate attorneys, and $175 for his paralegals.  In support of this request, NCRA filed sworn declarations by attorneys Stephan C. Volker and Richard M. Pearl, and by individual defendant NCRA's president, Frank Egger.

Attorney Volker's declaration highlighted his nearly 50 years of experience in the area of environmental litigation, which he cited as justification for an hourly rate of $750. He further declared, "[T]he reasonable market value of my services in the San Francisco Bay Area is currently at or above $800 per hour.  However, in this case I only request compensation based on Sacramento area market rates."[1]

---

[1]The Sacramento legal market is discussed throughout NCRA's motion papers, including all three supporting declarations.  The relevance of what attorneys earn in Sacramento, which is more than 150 miles away from where the case was venued and also outside the jurisdiction in which both NCRA and its counsel are based, was never explained.

Richard M. Pearl is a California attorney and author of numerous published works on the subject of attorney fees, including the treatise California Attorney Fee Awards (Cont.Ed.Bar). His declaration was intended to serve as an expert opinion on the value of attorney Volker's legal services in this case, as well as the services of Volker's associates and paralegals. Pearl opined NCRA's counsel are "top-rate attorneys" who achieved "excellent results" in the validation action, and the rates requested were "well within the range of hourly rates charged by comparable Sacramento attorneys and law firms for similar work."

According to Frank Egger's declaration, NCRA's board of directors "conducted a thorough search for the best counsel [it] could secure in Northern California to review and enforce the requirements of the validation laws on which Westlands based its lawsuit. … After a diligent search, including attorneys in the Fresno and Sacramento areas, [it] determined that Stephan Volker was the best qualified attorney to protect [NCRA's] interests and enforce the validation laws in this proceeding."

Frank Egger further declared NCRA "located no comparably experienced and skilled environmental attorney in Fresno County." The assertion was later repeated with slightly different wording: "We found no attorneys in Fresno County who had comparable skill and experience using the courts to protect and restore the Delta and its tributary rivers." Egger explained that while "there are other experienced environmental attorneys with a background in litigation in the Sacramento area," NCRA believed, "based on an extensive search, none [had] anywhere near as much trial and appellate experience and success in public interest litigation as Mr. Volker."

Westlands, in opposition, submitted a declaration by Lauren D. Layne, a shareholder in the Fresno law firm of Baker Manock & Jensen, PC. The firm's clients were said to include "Central Valley Project contractors" who, like Westlands, had "filed validation actions regarding their recent conversions" of preexisting contracts with the United States Bureau of Reclamation to repayment contracts. Layne's practice "focuses

7.

on general water and environmental law," and she serves as general counsel to "various irrigation and water districts" and "Groundwater Sustainability Agencies." Attorney Layne opined that her firm, "as well as a number of other attorneys in the Fresno area with whom [she was] familiar, [were] qualified to competently handle a validation action such as this one." Her firm's hourly rates for such work were in the range of $335–$550.

The trial court scrutinized the language used by NCRA's president, Frank Egger, and concluded it was "unclear whether NCRA located or considered hiring attorneys in Fresno [with] experience and skill in the relevant field, even if they did not have as many years of experience as Mr. Volker." The court also reasoned, "since the relevant area of law here is validation actions, not environmental law, Mr. Volker's impressive experience in environmental law was not necessarily a requirement for NCRA's defense of the action." In short, NCRA failed to demonstrate the necessity of hiring out-of-town counsel.

Unlike attorney Volker, two lawyers representing codefendants County of San Joaquin and County of Trinity attested to having significant environmental litigation experience *and* extensive experience with validation actions involving water contracts. In concurrently pending fee motions, those lawyers were requesting an hourly rate of $525. Considering NCRA was "seeking a much higher rate" than all other defense counsel in the case, and also impliedly relying on Westlands' evidence (attorney Layne's declaration), the trial court applied "a lower rate of $550 per hour for Mr. Volker and $350 per hour for the associates." NCRA's requested paralegal rate was allowed.

## B.    Law and Analysis

For purposes of determining the reasonable hourly rates "'prevailing in the community for similar work,'" the "relevant 'community'" is where the action is venued. (*Altavion*, *Inc. v. Konica Minolta Systems Laboratory*, *Inc*. (2014) 226 Cal.App.4th 26, 71, quoting *PLCM Group*, *Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1095.) "However, 'in

the unusual circumstance that local counsel is unavailable,' or that 'hiring local counsel was impracticable,' the trial court is not limited to the use of local rates and may instead use the hourly rate of out-of-town counsel from a higher fee market in calculating the lodestar amount." (*Marshall v. Webster* (2020) 54 Cal.App.5th 275, 286.)  One of the first appellate decisions to recognize these exceptions was from this district, *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359.

NCRA purports to rely on *Horsford*, and also *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, but both are inapposite.  In *Horsford*, a trial court abused its discretion by "failing to adequately consider" awarding higher rates for out-of-town counsel despite "overwhelming and uncontradicted" evidence of the impracticability of retaining a local attorney.  (*Horsford v. Board of Trustees of California State University*, *supra*, 132 Cal.App.4th at pp. 397, 398.)  "In the absence of any realistic indication plaintiffs could have found local counsel, it was an abuse of discretion to fail even to consider an hourly rate based on counsel's 'home' market rate."  (*Id.* at p. 399.)  A similar error occurred in *Center for Biological Diversity*, where "the only evidence on the issue of availability of local counsel showed plaintiffs' need to retain out-of-area counsel."  (*Center for Biological Diversity*, at p. 619.)

This case is more analogous to *Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, which the trial court cited in its ruling.  In *Rey*, the "appellants hired out-of-town attorneys from a higher fee area, with certain of the attorneys charging over $700 per hour.  The trial court concluded these rates were excessive for the Central Valley and instead calculated the fee award using a blended local rate of $325 per hour."  (*Rey*, at p. 1241.)  Although the appellants presented evidence of impracticability, the opposing party "submitted declarations from two local attorneys … [who] declared that they had the experience, skill and resources to accept such a case and would have taken [the] case if asked.  Thus, the trial court was faced with conflicting evidence.  Moreover, the appellants' evidence was speculative and *did not establish that appellants ever*

9.

*attempted to retain local counsel*.  Under these circumstances, the trial court did not abuse its discretion in applying local rates." (*Ibid*., italics added.)

Another analogous case is *569 East County Boulevard LLC v. Backcountry Against the Dump*, *Inc*. (2016) 6 Cal.App.5th 426.  As here, the dispute on appeal was over the hourly rates sought by the Law Offices of Stephan C. Volker.  (*Id*. at pp. 429.) The litigants "presented conflicting affidavits concerning the appropriate hourly rate for seasoned attorneys and fifth-year associates," and the appellant's expert "testified that $750 per hour for Mr. S. Volker and $350 per hour for the three fifth-year associates working on the case was within the market range charged for similar services by similarly qualified attorneys." (*Id*. at p. 437.)  "However, plaintiffs submitted contrary declarations that the market range charged for similar services by similarly qualified attorneys was much lower.  Moreover, the court was cognizant that the rate charged by a very seasoned attorney from the relevant community (San Diego), who [had achieved success for a codefendant] in this same litigation … was $275 per hour." (*Ibid*., fn. omitted.)  The trial court's application of "a flat hourly rate of $275" (*id*. at p. 436) for attorney Volker and his associates was affirmed on appeal.

Here, the trial court's analysis of the artfully worded declaration of NCRA's president was correct.  The declaration was not evidence of an inability to retain, or the impracticability of retaining, qualified local counsel.  It did not even establish that NCRA ever attempted to contact any Fresno attorneys.  There is an obvious and significant difference between a party's inability to secure qualified local counsel and its preference to hire whomever it perceives to be the very best attorney in a particular field of law.

In their briefing, NCRA repeatedly contends "no comparably qualified local attorney willing to represent NCRA on a contingent fee basis was available."  The assertion is misleading.  NCRA's president, Frank Egger, declared "Mr. Volker was willing to represent us in this litigation on a contingent fee basis."  The declaration says nothing about seeking or being unable to find other attorneys that would take the case on

10.

a contingency basis.  There is no evidence NCRA contacted any other attorneys or law firms about possible representation in this case except the Law Offices of Stephan C. Volker.

NCRA's emphasis on the fact Westlands' attorneys are based outside of Fresno is unhelpful.  Westlands was not the party seeking attorney fees.  Clients are free to hire whomever they wish, but their lay opinions regarding "the *best* qualified attorney" (as phrased by declarant Egger) do not obligate a trial court to apply out-of-market rates.  (Italics added.)

NCRA's reliance on *In re Tobacco Cases I* (2013) 216 Cal.App.4th 570 is misplaced.  There, a trial court's finding of impracticability was upheld on appeal as justification for awarding fees at out-of-market rates.  (*Id*. at pp. 581–583.)  The losing party argued the hourly rates should not have exceeded those charged by the local defense counsel it had retained.  In rejecting that argument, the appellate court noted the losing party utilized both local counsel and out-of-town attorneys from two national law firms, with the latter having taken "'the laboring oar.'"  (*Id*. at p. 583.)  The case does *not* hold that out-of-market rates must be applied if all parties hire out-of-town counsel.

Equally unhelpful is NCRA's argument the trial court "did not acknowledge the expert testimony of Richard Pearl" or adopt his opinions as its own.  "'The value of legal services performed in a case is a matter in which the trial court has its own expertise.'" (*PLCM Group*, *Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1096.)  Attorney Pearl's qualifications are not in dispute, but his opinions were generalized and conclusory with regard to the work performed by NCRA's counsel in this particular action.  "Certainly, the trial court was not bound by the contrary opinions submitted by [NCRA's] expert." (*569 East County Boulevard LLC v. Backcountry Against the Dump*, *Inc*., *supra*, 6 Cal.App.5th at p. 438; accord, *PLCM Group*, *Inc.*, at p. 1096.)

**IV.    The Trial Court Permissibly Reduced the Number of Compensable Hours**

The following principles have recurring application to NCRA's category-by category arguments regarding the trial court's disallowance of hours documented in the billing records of NCRA's counsel.

"The party seeking fees has the burden to prove that the trial court abused its discretion in awarding less than the amount it sought." (*Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1184.)  "Abuse of discretion review '"asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts [citations]."'  [Citation.]  The trial court's ruling will not be reversed if reasonable people could disagree as to the proper outcome." (*Ibid*.)

Attorney fee awards must be "'fully compensatory,'" meaning "parties who qualify for a fee should recover compensation for '*all* the hours *reasonably* spent.'" (*Roth v. Plikaytis* (2017) 15 Cal.App.5th 283, 290, quoting *Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1133.)  NCRA's lawyers are not entitled to compensation for all of their work "merely because it was performed." (*Baxter v. Bock* (2016) 247 Cal.App.4th 775, 793.)  "It was their burden to persuade the trial court the work was reasonably necessary, both as to the particular tasks performed and the amount of time devoted to them." (*Ibid*.)

NCRA cites *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106 as authority for an alleged rule that trial courts must explain any and all disallowances of hours actually worked by counsel.  A similar argument was rejected in *Mikhaeilpoor v. BMW of North America*, *LLC* (2020) 48 Cal.App.5th 240.  "*Moreno* … is not binding on this court and it is distinguishable." (*Id*. at p. 250.)  California state trial courts "are *not*

required to state 'each charge they find to be reasonable or unreasonable, necessary or unnecessary.'"**2** (*Mikhaeilapoor*, *supra*, at p. 250, italics added.)

A trial court's fee adjustments will not be disturbed unless the reviewing court is unable to rationalize them. (See *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101.) "It is not the absence of an explanation by the trial court that calls the award … into question, but its inability to be explained by anyone, either the parties or [the] appellate court." (*Ibid.*) If a reasonable explanation is inferable from the record, the decision will be upheld. (*California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 754.)

Counsel's billing records are the "starting point" for the trial court's lodestar determination. (*Horsford v. Board of Trustees of California State University*, *supra*, 132 Cal.App.4th at p. 397.) Bill "'padding' in the form of inefficient or duplicative efforts is not subject to compensation." (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1132.) Trial courts may therefore adjust fee awards to account for the inefficiency of having partners or senior attorneys performing work that could be handled by associates or paralegals. (See *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 41 ["The court reasonably could have reduced the rates based on its finding … that the name partners were doing work that could have been done by lower billing attorneys"]; *Save Our Uniquely Rural Community Environment v. County of San Bernardino*, *supra*, 235

---

**2**NCRA further purports to rely on *Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 88, which is also distinguished in the *Mikhaeilpoor* opinion. (*Mikhaeilpoor v. BMW of North America, LLC*, *supra*, 48 Cal.App.5th at pp. 248–250.) According to NCRA, *Kerkeles* shows "*Moreno*'s analysis … has been followed by California courts." What NCRA fails to mention is that *Kerkeles* involved fees awarded under a federal statute, which is why the *Kerkeles* court relied on federal case law. (See *Kerkeles*, at pp. 99 ["Because the entitlement arises under federal law, 'we follow the federal standard for determining section 1988 [of title 42 of the United States Code] issues'"], 104 [concluding "that the reasoning expressed in the court's order does not meet the federal criterion of a clear and specific explanation sufficient for meaningful appellate review"].)

Cal.App.4th at p. 1187 ["The trial court could reasonably have determined that billing at partner rates for these activities was excessive"].)

"A trial court is also justified in reducing a claim if it believes the billing is unjustly inflated." (*Save Our Uniquely Rural Community Environment v. County of San Bernardino*, *supra*, 235 Cal.App.4th at p. 1186.) "Block billing, while not objectionable per se," may preclude a fee claimant from meeting its burden of demonstrating the reasonableness of time spent on various tasks. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1325.) Where counsel's billing entries show "a lack of clarity in tasks performed," the vagueness may be construed on appeal as "evidence support[ing] the trial court's finding that [the fee claimant's] counsel failed to act efficiently." (*Mikhaeilpoor v. BMW of North America*, *LLC*, *supra*, 48 Cal.App.5th at p. 256.)

We now address NCRA's category-by-category arguments.

## A. Reviewing the Complaint and Drafting NCRA's Answer

### 1. Background

According to the declaration of Stephan C. Volker and billing records attached thereto, Volker spent 1.3 hours reviewing Westlands' validation complaint in December 2019 and e-mailing other defense counsel regarding the same. Volker's senior associate attorney, Alexis Krieg, spent 2.3 hours reviewing the complaint and its exhibits and sending an e-mail to Volker regarding the same. Krieg had been licensed for about 15 years.

Attorney Volker billed 11.2 hours for performing legal research in relation to the complaint. His billing records contain five separate entries for this task between December 4 and December 10, 2019, all described as "Legal research re: validation complaint." The last of those entries also said, "and emails with co-counsel." On

14.

December 11, 2019, Volker also billed 1.5 hours for "Factual research re: validation complaint."

Next, Volker billed 14.9 hours over the course of three days to draft NCRA's eight-page verified answer to the complaint. Two of the billing entries said, "Prepare Answer." The third said, "Prepare Answer to WWD Complaint." All told, accounting for another tenth of an hour billed by Volker plus some paralegal work, NCRA claimed 31.3 attorney hours (29 at Volker's rate) and 2.1 paralegal hours to review the complaint and prepare (and file) the answer.

The trial court's ruling for this category was as follows:

"NCRA's lodestar hours appear to be somewhat inflated and the court will reduce them accordingly. For example, NCRA's attorneys claim to have spent 33.4 hours [inclusive of paralegal time] on reviewing the Complaint and drafting the Answer. [Citation.] Spending so much time on relatively simple tasks appears to have been unwarranted, especially where the Complaint and Answer were each only 8 pages long (although the Complaint also included many pages of exhibits). Also, most of the time was incurred by the senior attorney, Mr. Volker, who bills at $750 per hour, when presumably many of the tasks could have been performed by an associate billing at a lower rate. The court intends to allow only 15 hours of attorney time for these tasks, with ten hours allocated to the associate's billing rate and five hours allocated to the senior attorney's billing rate. The court will also allow two hours of paralegal time."

### 2. Analysis

Westlands' validation complaint contained eight numbered pages, but the entirety of the first page was the caption and the last page contained only five lines of substantive text. It was basically a six-page pleading. There were also two exhibits. Exhibit "A" consisted of two documents: a five-page resolution passed by Westlands' Board of Directors and a roughly 75-page draft of the contract at issue in the validation action. Exhibit "B" was a virtually identical copy of the same draft included with exhibit "A."

Several hours of time to review the complaint and perform research was warranted. However, we see nothing unreasonable about the trial court's limitation of 15

15.

total attorney hours for reviewing the complaint, conducting research, and preparing the answer. NCRA offers no persuasive explanation of how or why it took nearly *15 hours* to draft the answer after the research had already been performed. And no explanation has been provided for why nearly all the work was done by Volker and not his senior associate.

NCRA's answer is eight total pages, plus a signed verification page. The first page is mostly taken up by the caption. There are approximately three lines of substantive text on the first page, asserting that no response is required to the first two paragraphs of the complaint. The second and third pages of the answer contain 23 single-sentence responses to the remaining paragraphs of the complaint. Eight of those responses state, "Defendants lack information and belief sufficient to answer the allegations …, and on that basis deny each and every allegation therein."

The fourth and fifth pages of the answer, and the first six lines of the sixth page, are characterized as "affirmative factual allegations." However, they merely provide background information on each of the six defendants. For example:

> "Defendant NORTH COAST RIVERS ALLIANCE ('NCRA') is a non-profit unincorporated association with members throughout Northern California. NCRA was formed for the purpose of protecting California's rivers and their watersheds from the adverse effects of excessive water diversions, ill-planned urban development, harmful resource extraction, pollution, and other forms of degradation. Its members use and enjoy California's rivers including the Sacramento River, the San Joaquin River, their Delta ('the Delta') and their watersheds for recreational, aesthetic, scientific study, and related non-consumptive uses. The interests of NCRA and its members will harmed [*sic*] by the continued reduction in and pollution of the freshwater flows in the Delta, degradation of its water quality, and loss of its fish and wildlife species that validation of the Converted Contract would cause."

It is a matter of public record that attorneys Volker and Krieg had been representing at least half of the NCRA defendants for many years prior to this validation action, including in cases against Westlands. (E.g., *North Coast Rivers Alliance v.*

16.

*Westlands Water Dist*. (2014) 227 Cal.App.4th 832, 838.) NCRA acknowledges some of the prior representation in its briefing. These attorneys were also actively representing all the NCRA defendants in other cases when the present lawsuit was filed. (See *Pacific Coast Federation of Fishermen's Associations v. Glaser* (9th Cir. 2019) 945 F.3d 1076; *North Coast Rivers Alliance v. U.S. Dept. of Interior* (E.D.Cal. 2018) 313 F.Supp.3d 1199.) The long-standing attorney/client relationship and the litigation history with Westlands call into question how much research and writing time was needed to draft the verified responses and "affirmative factual allegations" sections of the answer. Moreover, the detailed background information on each defendant is reasonably viewed as unnecessary and an inefficient use of attorney time.

The remainder of the sixth page and entire seventh page of the answer lists NCRA's affirmative defenses. The final page consists of a prayer for relief and signature block. NCRA fails to demonstrate an abuse of discretion regarding the trial court's assessment of the first category of billing events.

### B.     Opposition to Westlands' Validation Motion

#### 1.     Background

The declaration of Stephan C. Volker labels the second category of tasks as "Prepare Opposition to Westlands' Validation Motion 12/18/19 – 1/14/20 – 36.1 Hours." (Boldface omitted.) This heading is slightly misleading for two reasons. First, Westlands' motion was not filed until December 30, 2019. Second, despite identifying "12/18/19" as the starting point for this category, NCRA's stated total of "36.1" hours included 1.3 hours of paralegal time on December 17, 2019, for tasks concerning the rejection of its answer for failure to pay all required filing fees. NCRA also included 1.2 hours of paralegal time on December 18, 2019, in relation to the same issue. Attorney Volker billed one hour on December 24, 2019, for "Factual research re WWD contracts."

17.

Attorney Krieg billed 24.9 hours for reviewing Westlands' motion, conducting research, and drafting NCRA's opposition. The time spent was broken down across seven billing entries, some of which were appropriately specific. However, there was a block billed entry for 12.4 hours that said, "Perform research, review documents, draft opposition to Motion for Validation Judgment; prepare declaration and appendix of exhibits in support of the same."

Attorney Volker billed 10 hours for tasks associated with opposing the motion, including the hour of research on December 24, 2019. There was some block billing, i.e., combining "Emails with co-counsel" with "edit draft opposition to WWD motion for validation" in blocks of 2.1 hours and 5.2 hours. Another entry for 1.7 hours combined "Review WWD's Motion for Validation" with "emails with co-counsel."

The trial court ruled as follows:

"This amount of time appears to be excessive. While the motion and opposition did raise some fairly complicated legal issues, it was not reasonable to spend over 36 hours of time on these tasks. The court will permit 20 hours of attorney time, with 15 hours allocated to the associate's billing rate and five hours allocated to the senior attorney's rate. The court will also allow 1 hour billed at the paralegal rate."

### 2. Analysis

Westlands' motion papers included a memorandum with 15 pages of substantive text. There were two supporting declarations, and the exhibits to one of the declarations were voluminous. However, NCRA's counsel was already familiar with nearly all of those exhibits from their work reviewing the complaint and preparing the answer, *and* from their representation of NCRA in prior and other actively pending litigation against or involving Westlands. For example, one of the exhibits was a copy of the published opinion in *North Coast Rivers Alliance v. Westlands Water Dist.*, *supra*, 227 Cal.App.4th 832. Several other exhibits were earlier contracts between Westlands and the United

18.

States Bureau of Reclamation that were either at issue in, or parts of the records in, other cases in which NCRA's counsel was and/or had been involved.

The trial court's disallowance of 14.9 attorney hours is somewhat harsh given the potentially dispositive nature of the motion, but still within the limits of its discretion considering all the circumstances and some of the block billing. NCRA focuses on the size of the exhibits attached to its opposition brief (to be clear, not the exhibits to Westlands' motion) and the effort it took to compile them, but its attorneys were not billing to create the *content* of those exhibits. Attorney Krieg assembled nine documents and chose the order in which they would be presented. Block billing prevented the trial court from knowing how much time was actually spent on that task.

### C. Additional Work re: Westlands Validation Motion

#### 1. Background

Attorney Volker's declaration labeled the third category of work as "Review Order Denying Westlands' Motion for Validation 1/15/20 – 4/28/20 – 34.2 Hours." (Boldface omitted.) This was quite a misnomer since the referenced court order was not issued until March 16, 2020. The claimed 34.2 hours also included work pertaining to an appeal of part of the motion ruling, and as well as a case management conference (CMC) statement.

Attorney Krieg billed six hours for various tasks related to reviewing Westlands' reply brief in support of its validation motion (10 pages of substantive text) and preparing for the motion hearing. The motion hearing was continued by the trial court, sua sponte, from late January 2020 to February 27, 2020. Westlands made an unsuccessful ex parte request to have the motion heard earlier. Attorney Volker spent 11.5 hours on tasks related to the motion hearing, including block billed entries of 3.6 hours for "Review Tentative Ruling on WWD motion and prepare for hearing; emails with co-counsel" and 3.5 hours for "Prepare for and attend hearing on WWD's motion for validation."

19.

On March 18, 2020, attorney Volker billed 2.2 hours for "Review Final Order; emails with co-counsel." The "Final Order" was the trial court's minute order denying Westlands' validation motion and adopting the previously issued tentative ruling that Volker had already reviewed when preparing for the motion hearing. Between March 24, 2020, and April 10, 2020, Volker billed 1.8 hours for research and communication with other defense counsel regarding their appeal of the finding their answers to the complaint were untimely. Attorney Krieg billed 5.8 hours in April 2020 for tasks related to filing NCRA's appeal. Those hours included two identical, duplicative 0.2 entries on April 9, 2020, regarding filing fees.

The trial court ruled as follows:

> "NCRA's counsel also claims to have spent 34.2 hours preparing for and appearing at the hearing on the validation motion, as well as reviewing the trial court's order denying the motion. [Citation.] Ms. Krieg spent 13.6 hours on these tasks, and Mr. Volker spent another 16.8 hours on them. [Citation.] Ms. Krieg also spent 3.8 hours on paralegal tasks. [Citation.] Again, the time spent on these tasks was excessive. The court will allow only one hour of attorney time for preparing for and appearing at the hearing, as well [as] another hour to review the court's order, all billed at the associate's rate. The court will also allow one hour of paralegal time for this task."

### 2. *Analysis*

The trial court's analysis of this category was flawed, but NCRA has itself to blame for some of the confusion. The trial court's numbers were recited from attorney Volker's declaration, which contained miscalculations and misstatements about the work performed during the subject period of January 15, 2020, through April 28, 2020. The way his declaration was phrased made it seem like he was claiming hours only in relation to the motion hearing and his review of the motion ruling.

Attorney Krieg billed 15 total hours during the time period in question, and 3.4 of those hours were unrelated to the validation motion. Attorney Volker billed 16.8 hours between the subject period of January 15, 2020, through April 28, 2020, but one hour

20.

pertained to a joint motion to stay and other time was spent on preliminary appellate work. A total of 3.8 paralegal hours were billed during the subject period, but 1.4 of those hours pertained to the CMC statement.

The trial court's award of only two attorney hours and one paralegal hour would have been unreasonable given the correct numbers and varied tasks. However, as explained in the background section of this opinion, *ante*, the trial court's final award includes an additional $3,884.78 beyond what is reflected in its category-by-category explanation of the compensable time. The extra sum translates to about 7.4 attorney hours at the hourly associate rate of $350 (before applying the multiplier). Applying some of those hours to this category puts the trial court's decision within the limits of its discretion.

A separate discussion is warranted regarding NCRA's first CMC statement, which the parties address in their briefing. The amount of time billed in connection with this document was clearly excessive. On February 12, 2020, attorney Krieg billed 1.8 hours for "Prepare Case Management Statement, review and edit the same." Attorney Volker billed 0.3 hours to edit the CMC statement. Krieg then billed 1.4 hours to "[f]inalize and electronically file Case Management Statement." Krieg also billed 1.4 *paralegal hours* for the exact same task, i.e., finalizing and filing the CMC statement.

In total, per the billing records, NCRA's lawyers claimed to have spent 3.5 hours of attorney time and 1.4 hours of paralegal time to prepare a CMC statement. This is difficult to imagine. The document was a standard Judicial Council form (CM-110, rev. July 1, 2011) that mostly required checking boxes.

NCRA's counsel checked 10 boxes and typed a few sentences on the form. Counsel also included a two-page attachment with further responses to questions 1b and 4b. The response to 1b listed the names of all six NCRA defendants. The response to 4b was, as NCRA now describes it in their appellate briefing, an "analysis discussing numerous reasons why Westlands' Validation Complaint was contrary to law…." But

question 4b did not call for such a response. It merely instructed the filing parties to "[p]rovide a brief statement of the case, including any damages." What NCRA's counsel wrote was unnecessary and an inefficient use of attorney time, and it should not have taken as long to prepare as claimed. A severe reduction in the time allowed for this task was justified.

## D. Motion to Stay and Second CMC Statement

### 1. Background

The fourth category of tasks covered the period of April 29, 2020, through May 12, 2020. During this time, NCRA and two sets of codefendants worked on preparing a joint motion to stay the trial court proceedings while their appeals were pending. The motion was filed on May 12, 2020, and it contained 11 pages of substantive text (excluding the notice page).

Attorney Volker billed 3.1 hours for reviewing and editing drafts of the motion, plus 1.3 hours in block billed time for e-mailing codefendants' counsel regarding the same. Attorney Krieg billed 0.3 hours for reviewing "correspondence regarding" the drafts of, and edits to, the motion. In total, 4.7 attorney hours were billed regarding the motion to stay.

On April 29, 2020, Volker billed 1.3 hours for preparing a CMC statement. Attorney Krieg billed 0.2 paralegal hours to finalize and file the CMC statement. Krieg also billed 0.2 attorney hours to "[r]eview Case Management Statements."

The trial court ruled as follows:

"NCRA claims to have spent 6.4 hours on preparing a joint motion to stay the court proceedings while their appeal of the court's order finding their Answers to be untimely was pending, as well as preparing a case management conference statement. [Citation.] Mr. Volker spent 0.5 hours on this task, and Ms. Krieg spent 5.7 hours. Ms. Krieg also spent another 0.2 hours on paralegal tasks during this time. [Citation.] However, since the motion to stay was brought jointly with the other defendants and they presumably shared the work, and since the case management conference

22.

statement was virtually identical to prior statements filed by NCRA, the court intends to reduce the hours spent on this task to only three hours of attorney time billed at the associate's rate. The court will also allow the 0.2 hours of paralegal time."

### 2. Analysis

The trial court misstated the attorney hours billed by Volker and Krieg. It was Volker who billed 5.7 hours and Krieg who billed 0.5 hours, not the other way around. However, since it viewed the work as warranting only three hours of associate time, the misstatement does not suggest reversible error. The record indicates the lawyers for codefendants California Water Impact Network et al. did the bulk of the motion work and were separately awarded 18 hours of attorney time for their efforts. NCRA's attorneys evidently failed to carry their burden below of showing the necessity and/or efficiency of spending nearly five hours of attorney time to review and edit the work of other defense counsel. NCRA likewise fails to affirmatively demonstrate reversible error on appeal.

Regarding the CMC statement, NCRA contends "this was the first [CMC statement] that NCRA filed in this case" and could not have been "'virtually identical'" to a previous version. However, NCRA's Appellant's Appendix at page 2622 shows NCRA filed a CMC statement on February 13, 2020. Therefore, the 1.5 hours billed by Volker and Krieg on April 29, 2020, could not have been in relation to "the first … filed in this case." Furthermore, we are unable to locate the April 2020 CMC statement in the record and thus cannot determine whether it was or was not, as stated by the trial court, "virtually identical" to the previous one. NCRA has therefore failed to meet its appellate burden on this issue as well.

### E. Reply Brief re: Joint Motion to Stay; Further Appellate Work; Opposition to Westlands' First Renewed Validation Motion

### 1. Background

NCRA claimed a total of 33.3 attorney hours and 10.2 paralegal hours for work performed between May 13, 2020, and August 20, 2020. Attorney Volker billed 20.5 of

23.

those hours, which included work on a reply brief in support of the joint motion to stay; work on an opposition to a motion by Westlands to dismiss NCRA's appeal; and drafting an opposition to Westlands' "Renewed Motion for Validation of Contract." Westlands' "renewed" motion was filed on July 27, 2020.

When Westlands' July 2020 renewed motion was filed, the only parties then recognized by the trial court as proper defendants in the action were the separately represented Central Delta Water Agency and South Delta Water Agency (collectively, CDWA). CDWA filed an opposition brief on August 10, 2020. Soon afterward, the trial court granted the joint motion to stay. Westlands' (first) renewed motion was never ruled upon; it was essentially abandoned and superseded by the filing of a second renewed motion in September 2021. The sequence of events is discussed in *Westlands Water Dist. v. All Persons Interested*, *supra*, 95 Cal.App.5th at page 120.

The trial court was initially unwilling to allow the hours claimed by attorney Volker in connection with CDWA's opposition to Westlands' first renewed motion. However, during the hearing on NCRA's fees motion and in other written submissions, Volker claimed CDWA's opposition brief was ghostwritten by him. The CDWA defendants did not seek attorney fees, and the trial court ultimately awarded all time claimed by NCRA for the fifth category.

### 2.    *Analysis*

Because the trial court awarded all attorney and paralegal hours requested by NCRA for this category, there are no related claims to analyze. We note NCRA and its attorneys received full compensation for 11.1 hours billed by attorney Volker for writing CDWA's opposition to Westlands' first renewed validation motion. It will be important to remember this fact when we discuss the tenth category of tasks, *post*.

24.

### F.    Appellate Work ("8/21/20 – 10/13/20")

#### 1.    *Background*

The sixth category pertained to NCRA's opening brief and Appellants' Appendix in *Westlands Water Dist. v. North Coast Rivers Alliance*, *supra*, F081174 (hereafter F081174). NCRA's opening brief (AOB) contained 27 pages of substantive text. The appendix consisted of 11 items comprising roughly 162 pages, including a 25-page register of actions from the trial court.

Attorney Volker billed 19.3 hours for writing the AOB. His time was documented in seven block billed entries that said, "Draft Appellants' Opening Brief," and an eighth entry, "Edit Appellants' Opening Brief." Attorney Krieg billed four hours for similar tasks, e.g., "Review files and draft Appellants' Opening Brief … 1.5 [hours]" and "Draft Appellants' Opening Brief … 1.7 [hours]." Krieg also billed 1.4 paralegal hours to finalize and file the AOB.

The trial court found the billing excessive. It awarded 15 total attorney hours, allowing 11 hours at Volker's rate (a reduction of 8.3 hours) and four hours at Krieg's rate. One hour of paralegal time was allowed (a reduction of 0.4 hours).

#### 2.    *Analysis*

"When we are reviewing an award of attorney fees for appellate work, we need not accord the same degree of deference we would give to rulings that involve the trial court's firsthand knowledge." (*Center for Biological Diversity v. County of San Bernardino*, *supra*, 188 Cal.App.4th at p. 616.) This does not mean the appellate court can or should completely disregard the trial court's assessment and decide the issue de novo. It means "we may exercise '"somewhat more latitude in determining whether there has been an abuse of discretion than would be true in the usual case."'" (*Ibid*.)

We note the 27-page AOB, filed September 17, 2020, contains approximately eight pages of text copied and pasted, with very few edits or additions, from NCRA's opposition to Westlands' original validation motion, which NCRA had filed in the trial

court eight months earlier. The copied sections of the earlier work product are at pages 716 through 721 of the Appellants' Appendix in the current record on appeal. As for the remaining 19 pages (estimated) of new content, we observe that significant portions of the briefing contain large block quotes of statutory text and various rules of court. Attorney Volker's generic billing descriptions, e.g., "Draft Appellants' Opening Brief," preclude further analysis of whether the 8.3 attorney hours disallowed by the trial court were necessary and efficiently spent. For these reasons, we cannot say the trial court's decision was "'clearly wrong.'" (*PLCM Group*, *Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1095.)

### G. Further Appellate Work ("10/14/20 – 11/4/20")

#### 1. Background

The seventh category of tasks involved reviewing Westlands' respondent's brief in F081174, preparing NCRA's reply brief, and opposing Westlands' motion to augment the appellate record. Attorney Volker billed 4.4 hours for "Email with co-counsel re Appellants' Reply Brief and review Westlands' Respondent's Brief." Volker also block billed 17.6 hours across four other time entries for the combined tasks of unspecified legal research, e-mails with other defense counsel, and drafting/editing NCRA's reply brief.

Attorney Krieg billed 3.9 hours for the combined tasks of performing legal research and drafting an opposition to Westlands' motion to augment. Krieg separately billed 6.2 hours to "[p]erform legal research and draft memo to Mr. Volker regarding the same in support of Appellants' Reply Brief." There was an additional billing entry of 1.3 hours for unspecified research, and 3.8 paralegal hours block billed for the combined tasks of finalizing and filing NCRA's reply brief and opposition to the motion to augment.

The trial court ruled as follows:

26.

"NCRA also claims to have incurred 37.2 hours on reviewing Westlands' respondent's brief on appeal, opposing Westlands' motion to augment the record, and preparing the reply brief. NCRA incurred 33.4 hours of attorney time (11.4 hours by Ms. Krieg and 22 hours by Mr. Volker), plus 3.8 hours of paralegal time. [Citation.] This amount of time appears to be excessive. The court will award 15 hours of attorney time for these tasks, with five hours to Ms. Krieg and ten hours to Mr. Volker, plus two hours of paralegal time."

### 2.     *Analysis*

NCRA's reply brief in F081174 contained approximately 29 pages of substantive text. However, large portions of the reply brief at pages 22 through 25 were simply copied and pasted (with minimal edits or changes) from the previously filed AOB, specifically pages 25 through 28. Portions of the reply brief at pages 28 and 30–32 were similarly copied from the AOB at pages 28 and 30–31.

Furthermore, due to vague time entries, the nature of counsel's legal research is entirely unclear. Likewise with regard to the amount of time spent researching, as opposed to writing, the reply brief. The main issue in F081174 was whether, for purposes of meeting a filing deadline, the date of a trial court's receipt of an electronically submitted pleading constitutes the filing date of the pleading. There was very limited authority on the issue, both in terms of case law and applicable statutes and rules of court. It is thus unclear and difficult to reasonably infer what, exactly, NCRA's counsel spent so much time researching at the reply brief stage. A second issue concerning appellate jurisdiction was also addressed in the reply brief, but NCRA had already filed a separate opposition to Westlands' motion to dismiss.

Westlands' motion to augment the record contained less than a page of substantive text and was cited only for procedural background in the respondents' brief. NCRA's two-page opposition, for which attorney Krieg billed 3.9 attorney hours and additional paralegal time, was unsuccessful and frankly, in this court's view, unnecessary. NCRA fails to demonstrate reversible error as to the eighth category of work.

### H. Further Appellate and Postappeal Work ("12/30/20 – 5/25/21")

#### 1. Background

Oral argument in F081174 was held on the afternoon of February 24, 2021. Attorney Krieg billed 0.3 attorney hours and 0.3 paralegal hours to fill out and return the oral argument questionnaire. On February 22, 2021, Krieg billed 1.5 hours for assisting attorney Volker with general preparation for the argument. The next day Krieg billed 1.1 hours for "legal research" and corresponding with Volker about the upcoming argument. On the day of oral argument, Krieg billed another 3.7 hours for further unspecified "legal research."

Attorney Volker billed 29.8 hours for his oral argument preparation and court appearance. This included a block billed time entry of 6.8 hours on the day of argument: "Prepare for and participate in oral argument on appeal, and emails with co-counsel." Next, on March 9, 2021, Volker billed 1.2 hours to "[r]eview Court of Appeal Ruling," i.e., the 13-page unpublished opinion in F081174. Attorney Krieg also billed for reviewing the opinion, but it only took her 0.3 hours.

Between March 12 and March 25, 2021, Volker billed 3.5 hours to prepare for and attend a CMC. Attorney Krieg billed 0.9 attorney hours and 0.4 paralegal hours in connection with the same CMC. Volker also billed 0.3 hours for client e-mails.

The trial court found the billing excessive. It allowed only four hours of attorney time: three hours at Volker's rate and one hour for Krieg. An additional 30 minutes was allowed for paralegal time.

#### 2. Analysis

The oral argument in F081174 was approximately 45 minutes in duration. Attorney Volker's opening argument lasted approximately 15 minutes, and most of the time was spent reading directly from prepared remarks. Much of the prepared material was clearly taken from NCRA's AOB and reply brief. For example, Volker spent the

first three minutes reciting, verbatim, the introduction section of the AOB. Volker's rebuttal argument lasted approximately eight minutes.

NCRA insinuates some of the research in preparation for the F081174 oral argument concerned a supplemental authority letter filed by Westlands a few days before the argument. That letter, filed in accordance with rule 8.254 of the California Rules of Court, merely noted the statute at issue (Code. Civ. Proc., § 1010.6) had been amended the previous month. NCRA also claims its attorneys' extensive oral argument preparation was necessary to work through the complex issues and refute the positions taken by Westlands. The argument is not persuasive because that is presumably what counsel had already billed for during the preliminary and brief-writing stages of the appeal.

Due to the vague billing entries, the time spent on research was not clearly justified. Oral argument is not the time or place for new legal arguments, so the need for so much late-stage research is not apparent (e.g., 3.7 hours of research on the day of argument). (See Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2023) ¶ 10:22, p. 10-5.) We also agree with the trial court as to the seemingly excessive and inefficient amount of preparation time. It does not take hours of preparation to simply read from the briefs. (See *id*., ¶ 10:22 ["oral argument should *not* be used to repeat the facts and arguments set forth in the briefs; indeed, most courts expressly *disfavor* such approach"].) Billing 1.4 hours to review the 13-page opinion in F081174 seems excessive as well. We defer to the trial court on the CMC work.

Here again, NCRA does not meet its appellate burden to demonstrate grounds for reversal. The trial court was perhaps harsher in its reductions than this court might have been, but it was not clearly wrong. As with the third category, discussed *ante*, any doubts would be resolved by the trial court's additional award of $3,884.78 beyond what is reflected in its category-by-category explanations.

## I. Mandatory Settlement Conference

The ninth category of work covered the period of June 4, 2021, through July 22, 2021. Attorney Volker billed 4.8 hours for "post-remand activities" including preparation of a mandatory settlement conference (MSC) statement. Attorney Krieg billed 3.9 attorney hours and 1.1 paralegal hours for similar MSC-related tasks.

The trial court allowed five attorney hours: three at Volker's rate and two at Krieg's rate. One hour of paralegal time was allowed. NCRA does not challenge these reductions in its briefing. Any related claims have been forfeited. (*Swain v. LaserAway Medical Group, Inc*. (2020) 57 Cal.App.5th 59, 72.)

## J. Everything Else

### 1. Background

NCRA's fees motion claimed approximately 75 attorney hours and six paralegal hours for all work performed between September 1, 2021, and April 4, 2022. The claim was broken down into four smaller categories for work on NCRA's "Opening Trial Brief" (the actual filing was labeled "Opening Merits Brief"); "Reply Trial Brief" (originally filed as "Reply Merits Brief"); "Preparation for and Participation in Merits Hearing"; and "Post-Merits Hearing Preparation of Judgment and Writ." The "writ" reference was never explained and appears to have been a drafting error by NCRA's counsel. The trial court's ruling addressed everything in one final category of tasks.

Attorney Volker billed 72.1 hours during the subject time period. Attorney Krieg billed 2.7 attorney hours and 6.2 paralegal hours. NCRA's motion papers alleged Krieg's attorney and paralegal hours were 1.5 and 7.4, respectively, but NCRA evidently mixed up Krieg's billing of 1.2 hours on September 17, 2021, which she in fact documented as paralegal time.

Most relevant is Volker's billing of 40.9 hours to write the Opening Merits Brief. The work was documented in seven different time entries, each stating, "Prepare Opening Merits Brief." An eighth entry said, "Proofread Opening Merits Brief."

30.

Attorney Volker subsequently billed 3.7 hours to review Westlands' "Merits Brief," referring to its second renewed validation motion. Volker then billed 3.7 hours for unspecified legal research for NCRA's reply, and 12.9 hours to write the reply. The latter work was documented in seven billing entries described only in terms of drafting, editing, and proofreading "NCRA Reply Brief."

Westlands challenged the reliability of the billing records, pointing out that "large sections of [the] work product"—specifically as to NCRA's Opening Merits Brief—were "copied and pasted from previous filings." In a supporting declaration, Westlands' counsel explained the process she and her staff used to detect the cut-and-paste job and attached documentation to illustrate it. As we will discuss, there was even more copying than Westlands realized.

The trial court ruled as follows (original paragraph split for readability):

"Finally, NCRA seeks 45.6 hours for preparing their opening trial brief (40.9 hours by Mr. Volker with 4.7 hours of paralegal work), 23.0 hours for preparing the reply brief (20.3 hours by Mr. Volker and 2.7 hours of paralegal work), and 6.4 hours to prepare for and appear at the merits hearing (0.7 hours by Ms. Krieg and 5.7 hours by Mr. Volker), plus another 6.0 hours on preparing the judgment, communicating with counsel, and participating in status conferences (0.8 hours by Ms. Krieg and 5.2 hours by Mr. Volker). Thus, NCRA claims to have incurred a total of 81 hours for all of these tasks.

"[B]ut the court finds that a more reasonable number is 18 hours of attorney time, with one hour by Ms. Krieg and 17 hours by Mr. Volker, plus two hours of paralegal time."

### 2. *Analysis*

"Where, as here, the trial court severely curtails the number of compensable hours in a fee award, we presume the court concluded the fee request was padded." (*Christian Research Institute v. Alnor*, *supra*, 165 Cal.App.4th at p. 1325.) The trial court may have held back on its explanation in order to save NCRA's counsel from embarrassment. By pressing the issue on appeal, NCRA forces this court to be more explicit.

31.

NCRA's "Opening Merits Brief" contains 25 pages of substantive text. The substantive material is located in the Appellants' Appendix (AA) of the current appellate record at pages 3025 through 3049. Because of the caption page and tables, the brief begins on page 8. The content at page 8, line 25 (AA 3025:25) through page 13, line 15 (AA 3030:15), including a lengthy footnote on page 10 (AA 3027), is mostly identical to and obviously copied from NCRA's prior opposition to Westlands' original validation motion (AA 716-721) and/or NCRA's AOB in F081174 at pages 9 through 16.

In short, the vast majority of the first six pages of NCRA's "Opening Merits Brief" (numbered as pp. 8–13) are copied from previously filed documents. The next four pages (numbered as pp. 14–17) appear to be newly created work product. But the copying resumes on page 18 (AA 3035) and continues through page 24 (AA 3041). This second chunk of copied material was clearly taken from CDWA's opposition to Westlands' first renewed validation motion (AA 2859:17 – AA 2866:23). As previously explained, attorney Volker took credit for writing the CDWA brief and was awarded 11.1 hours for the earlier work.

The portion of NCRA's "Opening Merits Brief" that was copied from the earlier CDWA brief ends at page 24, line 14 (AA 3041:14). The rest of page 24 appears to be new work product. However, the cut-and-paste resumes on the very next page (p. 25) (AA 3042) and continues through the end of the brief (p. 32) (AA 3049). This third chunk of copied material is again taken from NCRA's earlier filed opposition to Westlands' first validation motion (AA 722:24 – AA 730:25).

In summary, approximately 19 of the 25 pages in NCRA's "Opening Merits Brief" were cut and pasted from prior submissions. Put differently, roughly 75 percent of the brief was copied from previously filed documents. Yet attorney Volker billed 40.9 hours for drafting and editing the brief. The math works out to nearly seven hours billed for each page of fresh material, and that is before Krieg spent 1.2 hours of attorney time and 3.5 paralegal hours finalizing the document. Even describing it in these terms does not

32.

adequately convey the paucity of unrecycled text in the document. There are minor edits and additions to some of the copied work, but the operative word is minor.

There is nothing wrong with reusing or repurposing one's own work product, but it takes far less time and skill to copy and paste old material than it does to create new content. As such, the trial court was within its discretion to disallow much of the time billed for NCRA's "Opening Merits Brief." The cumulative effect of what it viewed as excessive billing throughout the case would rationally explain the further reductions of time in the tenth category. "An attorney's chief asset in submitting a fee request is his or her credibility, and where vague, block-billed time entries inflated with noncompensable hours destroy an attorney's credibility with the trial court, we have no power on appeal to restore it." (*Christian Research Institute v. Alnor*, *supra*, 165 Cal.App.4th at pp. 1325–1326.)

## DISPOSITION

The amount of the trial court's fee award is affirmed. Westlands shall recover its costs on appeal.


PEÑA, Acting P. J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.


33.